UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**JACOB F.,**

**Plaintiff,**

      v.

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant**.

Case No. 1:23-cv-00631-TK

OPINION AND ORDER

## OPINION AND ORDER

      This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for supplemental security income. That final decision was issued by the Appeals Council on April 25, 2023. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 7) and the Commissioner filed a similar motion (Doc. 10). For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I.  BACKGROUND

      Plaintiff protectively filed an application for supplemental security income on November 2, 2020, alleging a disability beginning on that day. After initial administrative denials of his application, Plaintiff appeared at a video hearing before an Administrative Law Judge on April 27, 2022. Both Plaintiff and a vocational expert, Lynn Paulson, testified at the hearing.

      The ALJ issued an unfavorable decision on June 29,2022. In that decision, the ALJ found, first, that Plaintiff had not engaged in substantial gainful activity since his application date. Next, the ALJ determined that Plaintiff suffered from severe impairments including left hip fracture, status post ORIF repair surgery; degenerative disc disease of the cervical, thoracic, and lumbar spine; obesity; and degenerative joint disease of the left shoulder. The ALJ further found that none of these impairments, considered singly or in combination, met or equaled the criteria for disability under the Listing of Impairments.

      Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the ability to perform a limited range of light work, concluding that he could occasionally reach overhead with his left arm, could no more than occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. Additionally, he could never climb ladders, ropes, and scaffolds.

Plaintiff had past relevant work as a cable installer, kitchen helper, and materials handler. The ALJ determined, based on the testimony of the vocational expert, that Plaintiff no longer do any of those jobs, but he could do unskilled light jobs like price marker, inspector (hand packager), and office helper, and that those jobs existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In his motion for judgment on the pleadings, Plaintiff raises these arguments:

1. The ALJ committed legal error at step 5 of the sequential evaluation by failing to resolve conflicts between the VE testimony and the DOT before determining Plaintiff could perform other work in the economy.

2. The ALJ failed to follow the regulations in evaluating the medical opinion evidence of record.

Plaintiff's memorandum, Doc. 7-1, at 15, 18.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 49 years old at the time of the administrative hearing, first testified that he lived in an apartment and that he was still able to drive. At the time of the hearing, he was attending classes at Buffalo State College. He had previously gotten a degree in digital media. Plaintiff said his last job was working as a companion for someone who had suffered a traumatic brain injury. Before that, he had been a bill collector and also a satellite and cable installer. He had a number of other jobs as well including working at Goodwill Industries and washing dishes at an Applebee's.

When asked why he could not work, Plaintiff said that he permanent neck damage that prevented him from turning his head. He also suffered symptoms of PTSD including not being able to sleep normally. Plaintiff said that he had pain in his left shoulder, knee, and ankle, and was never pain-free. He had to change positions constantly, needed to stand after sitting for an hour to an hour-and-a-half, and could stand for 15 minutes and walk a tenth of a mile. Plaintiff could lift fifteen pounds and had gotten treatment from physical therapy and a chiropractor as well as a pain management specialist. The only medication he took was aspirin due to issues with addiction recovery.

Plaintiff further testified to having had surgery on his left hip in 2008. He had been offered other surgeries but declined them. He was being treated for mental health issues as well, seeing both a counselor and a psychiatrist. Plaintiff said he had not been doing household chores due to his knee pain and depression and that he had some difficulty being around people in

situations where he was not free to leave. Both counseling and medications helped with his mental health symptoms, but he still had some memory and concentration problems.

The vocational expert, Dr. Paulson, first testified that Plaintiff's past relevant work was as a cable installer, a kitchen helper, a material handler, and a janitor, all jobs performed at the medium exertional level or higher. She was then asked questions about a person who was limited to light work and who had limitations on the use of his left arm as well as a number of postural restrictions. She said that such a person could not do any of Plaintiff's past work. However, someone who had the limitations described to her and who had Plaintiff's vocational profile could do unskilled light jobs like merchandise marker, inspector and hand packager, and office helper, and she gave numbers for those jobs as they existed in the national economy.

The ALJ then asked Dr. Paulson a second hypothetical question incorporating additional restrictions including a limitation to sedentary work and to simple tasks with only occasional interaction with others and only occasional changes to the worksite and routine. She said that such a person could work as a document preparer, addressing clerk, and touchup screener. If, however, a person were off task 20% of the time and absent for more than two days per month, that person could not do any of those jobs. Finally, she said that there would be zero tolerance for absenteeism during a thirty-day probationary period.

### B. Medical Evidence

Neither of Plaintiff's claims depend to any great extent on an interpretation of the medical evidence. That evidence is well-summarized in the ALJ's decision and shows, generally, that Plaintiff's left shoulder was injured in a motor vehicle-pedestrian accident in 2017 and that he also injured his back that year. He later developed some limitations in the range of motion of the cervical spine and there were objective findings of an impairment in that area as well as in the lumbar spine. There were also records of his mental health treatment indicating that he did report some issues with concentration and with depression but that he also was able to function in home, school, and social settings, and mental status examinations were essentially normal.

### C. Opinion Evidence

On February 2, 2021, Plaintiff saw Dr. Ippolito for a consultative psychiatric evaluation. He was attending college full-time despite his diagnoses of anxiety and depression. On examination, his affect was appropriate and his concentration and attention were intact, as were his recent and remote memory skills. Dr. Ippolito believed that Plaintiff could follow both simple and complex instructions and interact adequately with others. He did have a mild limitation in his ability to regulate emotions, control behavior, and maintain well-being, and a moderate limitation in his ability to take appropriate precautions in response to normal hazards, but none of his limitations were serious enough to interfere with his functioning on a daily basis. (Tr. 680-84). The state agency reviewers subsequently concluded that Plaintiff did not have any severe mental impairments.

On the same day Plaintiff saw Dr. Ippolito, he was also examined consultatively by Dr. Dave. He told Dr. Dave he had experienced left hip pain since a fall in 2010 and injured his shoulder and spine in an accident in 2017. On examination, he appeared to be moderately to severely obese and had some limitation in the use of his left shoulder. His hand and finger dexterity were intact. Dr. Dave's opinion of restrictions included a moderate limitation for repetitive activities in the left leg, walking at a rapid pace, and limitations in reaching above the left shoulder level as well as gross motor manipulation of large or heavy objects. (Tr. 686-90).

On March 15, 2022, Plaintiff's treating therapist and psychiatrist completed a mental impairment questionnaire. They indicated that he presented as cooperative and appropriate but that his thought processes were circumstantial. His major limitations were having only a fair ability to perform at a consistent pace, which was later characterized as a mild limitation, responding appropriately to changes in the work setting, and dealing with work stress. Otherwise, he had a good or unlimited ability to perform work-related functions. (Tr. 811-16).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV. DISCUSSION

### A. Conflict with the DOT

Plaintiff first argues that the ALJ failed to identify any inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles. He notes that each of the light jobs that she described, and which the ALJ found that Plaintiff could perform, require frequent reaching. However, as noted above, the ALJ found that Plaintiff was limited to occasional overhead reaching with his left arm. Although the ALJ did ask Dr. Paulson, in his introductory questioning, to identify any conflicts between her testimony and the DOT (Tr. 90), Plaintiff argues that such a "catch-all" question is insufficient to discharge the ALJ's duty to inquire about conflicts. In response, the Commissioner contends that there is, in fact, no apparent conflict between the expert's testimony and the DOT because there is a difference between a restriction in bilateral reaching, which was the limitation addressed in *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87 (2d Cir. 2019), the primary case relied on by Plaintiff, and a restriction on overhead reaching with one arm, which is the issue here.

The undersigned has addressed almost this exact issue before, ordering a remand in the case of *Roderick R v. Comm'r of Soc. Sec.*, 2023 WL 3642035 (W.D.N.Y. May 25, 2023). The claimant in that case was also limited to occasional overhead reaching with his non-dominant arm. The vocational expert identified a number of jobs which someone with that limitation and the claimant's vocational profile could perform. All but one of those jobs required, according to the DOT, frequent reaching. This Court found that the definition of "reaching" in the DOT was broad enough to encompass bilateral overhead reaching, meaning that there was an apparent conflict between the DOT and the testimony of the vocational expert. Although the ALJ apparently recognized the conflict in that case and asked some questions about it, the Court held that there had not been a sufficient inquiry into the basis of the testimony that someone with such a reaching restriction could do the jobs in question. The case was therefore remanded for additional proceedings.

In *Roderick R.*, the Court rejected many of the arguments made by the Commissioner in this case, and it stands by that rejection. *And see, e.g., Julio A.P. v. Kijakazi*, 2024 WL 3439503 (July 17, 2024). At a minimum, the ALJ must, on remand, inquire of the vocational expert whether she believed that a person with Plaintiff's reaching restriction could perform the jobs in question, and, if so, on what she based that belief. Consequently, the case will be remanded based on Plaintiff's first claim of error.

### B. Opinion Evidence

In his second claim of error, Plaintiff argues that the ALJ improperly failed to incorporate limitations into the residual functional capacity finding which were included in the opinion evidence he found to be persuasive. In particular, he notes that the ALJ purported to accept the opinions of both Dr. Dave, the consultative examiner, and the treating mental health providers, but then did not incorporate all of the limitations they suggested into the ultimate residual functional capacity finding, nor did he explain when they were rejected. The Commissioner responds that the ALJ did incorporate all of the limitations in Dr. Dave's opinion or those

expressed by the treating mental health providers. The Commissioner responds that the ALJ actually incorporated all of Dr. Dave's findings into the RFC.

It is not strictly necessary to rule on this claim of error since the case is being remanded on other grounds. However, the Court has difficulty seeing that the ALJ made any error here. Nevertheless, on remand, the ALJ should feel free to revisit this issue in light of the arguments advanced by Plaintiff.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 7), **DENIES** the Commissioner's motion (Doc. 10), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**